RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0017P (6th Cir.)
File Name: 02a0017p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

WENDY ELWELL,
      *Plaintiff-Appellee/*
      *Cross-Appellant,*

    *v.*

UNIVERSITY HOSPITALS
HOME CARE SERVICES,
      *Defendant-Appellant/*
      *Cross-Appellee.*

Nos. 00-3061/3171

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 98-02472—Paul R. Matia, Chief District Judge.

Argued: August 9, 2001

Decided and Filed: January 11, 2002

Before: MOORE and COLE, Circuit Judges; FORESTER,
Chief District Judge.[*]

———————————————

[*]The Honorable Karl. S. Forester, Chief United States District Judge
for the Eastern District of Kentucky, sitting by designation.

1

---

**COUNSEL**

---

**ARGUED:** Dennis N. LoConti, FORBES, FIELDS & ASSOCIATES, Cleveland, Ohio, for Appellant. Elizabeth Zink Pearson, PEARSON & BERNARD, Covington, Kentucky, for Appellee. **ON BRIEF:** Dennis N. LoConti, Scott H. Schooler, FORBES, FIELDS & ASSOCIATES, Cleveland, Ohio, for Appellant. Elizabeth Zink Pearson, Lucian J. Bernard, PEARSON & BERNARD, Covington, Kentucky, for Appellee.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge. On cross-appeals, Plaintiff-Appellee/Cross-Appellant, Wendy Elwell ("Elwell"), and Defendant-Appellant/Cross-Appellee, University Hospitals Home Care Services ("University" or "the hospital"), raise a number of issues arising from Elwell's suit alleging that the hospital had failed to pay her, one of its home health care nurses, overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Ohio's Minimum Fair Wage Standards Act, Ohio Revised Code § 4111 *et seq.* University appeals the district court's denial of its motion for summary judgment and grant of Elwell's cross-motion for summary judgment on the issue of whether Elwell was a professional, and therefore exempt from the FLSA's overtime requirements. The district court found that Elwell was not paid on a fee basis, as required by the FLSA regulations' definition of a professional, because she received both per-visit fees and hourly compensation. On cross-appeal, Elwell argues that University has not satisfied its burden of showing good faith, and that the district court therefore abused its discretion by not awarding her liquidated damages following a jury verdict in her favor on damages. Elwell further contends that the district court improperly

precluded the jury from finding that University's recordkeeping practices constituted a willful violation of the FLSA. We **AFFIRM** the district court's determination that Elwell was not a professional exempt from the FLSA overtime requirements. We **REVERSE** the district court's denial of liquidated damages. We **AFFIRM** the district court's ruling as to the recordkeeping evidence.

## I. BACKGROUND

On May 22, 1995, Elwell began working for University as a home health care nurse for the West Side of Cleveland. Elwell's job duties as home health care nurse consisted of "driving to patients' homes or places of residence, providing varied skilled nursing services to patients in accordance with . . . plans of care established for the patients and approved and certified by the patients' attending physician," and "complet[ing] nursing notes and documentation of the services [she] provided to patients." J.A. 81-82.

When Elwell first began employment with University in 1995, she received $30.00 for each medical/surgical visit and $42.00 for each IV infusion visit she completed during the workweek. Additionally, she received a $10.00 payment for completing admissions paperwork for each of her visits and hourly compensation ($17.00 per hour) for the time she spent completing the necessary documentation for each visit. Furthermore, if Elwell completed an infusion visit that lasted longer than two hours, she received an hourly rate for her patient visit.

On July 16, 1996, University changed its compensation plan for home health care nurses by eliminating the additional hourly pay that the nurses received for completing documentation. University made no increase in the nurses' per-visit rates to compensate for the elimination of the additional hourly payments. The hospital also eliminated its policy of reimbursing health home care nurses for "Not Home/Not Found" visits.

On February 10, 1997, University reduced the per-visit rates for medical/surgical visits to $28.00 and for infusion visits to $38.00, plus $8.00 for any patient that was a new admission for services. To be considered a full-time home health care nurse by the hospital, Elwell had to complete a minimum of twenty-five patient visits per week. According to University, it required full-time home health care nurses to complete a minimum of twenty-five visits per week because "the actual time spent with patients during [25] visits, completing associated documentation, traveling to and from [the] visit[s] and discussing the plan of care with medical and health care personnel and the patient[s] and fami[lies] would, together with scheduled meetings, equal forty (40) hours per week." J.A. at 43. The hospital also required Elwell to perform on-call services at least once a week or every ten days (for which she would be compensated at a rate of $3.00 per hour) and to attend regular staff meetings and in-service training (for which she was compensated at a rate of $17.65 per hour), which Elwell testified took approximately four hours per month.

According to Elwell, despite University's estimate of the time required to perform twenty-five visits per week (39 hours), she regularly worked an average of sixty hours per week to complete her required visits, including ten to fifteen hours each week to complete required documentation and telephone calls to patients and physicians. Additionally, Elwell accepted and, on occasion, volunteered for additional visits during the week but was paid regular visit rates for such work. Elwell did not receive compensation at a rate of time and a half for any hours she worked in excess of forty hours a week.

On September 12, 1997, Elwell resigned from University. On October 29, 1998, she filed this lawsuit against University, alleging violations of the overtime provisions in the FLSA. On July 22, 1999, University moved for summary judgment on Elwell's FLSA claim on the ground that Elwell was a professional employee exempt from the FLSA overtime

Under the circumstances, therefore, we conclude that the risk of jury confusion from the district court's ruling was minimal, and any error was harmless.

### III. CONCLUSION

The judgment of the district court is **AFFIRMED IN PART** and **REVERSED IN PART** and the case is **REMANDED** for further proceedings in accordance with this opinion.

action appears to the court inconsistent with substantial justice." Fed. R. Civ. P. 61; *see also Gandy v. Sullivan County*, 24 F.3d 861, 866 (6th Cir. 1994) (holding that judge's comments to jury during Equal Pay Act trial were harmless error). "Plainly Rule 61 teaches that the proceedings are not to be disturbed because of an error that prejudiced no one." 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2883 (2d ed. 1995).

On the record before us, we are unable to conclude that the judge's ruling resulted in unfair prejudice. Considering the ruling in the context of the instructions as a whole, *Beard*, 900 F.2d at 72, we think the risk of jury confusion was minimal. In its original instructions, the court highlighted the employer's duty to keep records in the context of its willfulness instruction. We think the court's decision to group these two issues likely alerted the jury that the recordkeeping evidence was potentially significant to its willfulness determination, without suggesting that it could return a verdict of willfulness based exclusively on a finding that the recordkeeping practices were reckless. Although the court could have more clearly explained the relationship between recordkeeping and willfulness, the instructions mitigated somewhat the risk that the jury would misinterpret the court's subsequent ruling as precluding any consideration of recordkeeping evidence on the question of willfulness.

Moreover, Elwell never presented the jury with any theory as to how the recordkeeping evidence could be probative of the factual question that was properly at issue — i.e., whether University willfully violated the FLSA's overtime pay provisions. We find it unlikely, therefore, that the jury would have been inclined to make such a connection absent the district court's ruling. Elwell's closing argument focused exclusively on persuading the jury that it could award an additional year of unpaid overtime if it found University's violations of the FLSA's recordkeeping provisions to be willful. As we have already explained, this is an incorrect statement of law, and was itself likely to mislead the jury.

provisions. University argued that Elwell not only possessed the qualifications and duties of a professional as defined by 29 C.F.R. § 541.3 but also was compensated for her services as a professional, in particular on a fee basis, as required by 29 C.F.R. § 541.3(e).

On August 9, 1999, Elwell filed a cross-motion for summary judgment. She argued that University had not paid her on a fee basis because she was also paid on an hourly basis for on-call duties, staff meetings, and in-service training and because she never agreed to the established per-visit fees.

On November 2, 1999, the district court concluded that University had not paid Elwell as a professional as defined in the FLSA, denied University's motion for summary judgment, and granted Elwell's motion for summary judgment. The district court explained, "[University] did not pay Elwell an agreed sum regardless of time spent on a particular task but used time estimates for a flat payment amount with an enhancement by an hourly rate if a visit took over two hours." *Elwell v. University Hosp. Home Health Care Servs.*, 76 F. Supp. 2d 805, 807 (N.D. Ohio 1999). The district court noted that, unlike the salary basis regulation for professionals, the fee basis regulation did not allow employers to supplement fees with additional forms of compensation. The court also explained that, unlike the supplemental compensation that is authorized for salaried professionals under the FLSA, *i.e.*, commissions, bonuses, and shift payments, which are linked to "effort and work output[,] . . . Elwell was getting extra pay for extra work," not for work she had already performed. *Id.* at 808. Finally, the district court asserted that Elwell was not a professional exempt from the FLSA standards because "the character or nature of [her] job was not unique" and thus the hospital's payments to her on a per-visit basis were not of the type contemplated by the FLSA regulations. *Id.* at 809.

On December 13, 1999, a jury unanimously found for Elwell on her FLSA damages claim in the amount of $25,478. The district court awarded Elwell "prejudgment interest on

the amount of the judgment from the date of the filing of the complaint through the date of entry of the judgment," J.A. at 151-52 (D. Ct. Order 1/25/00), and also awarded $49,884.85 in attorneys' fees and costs. J.A. at 164 (D. Ct. Order 2/2/00). The district court did not, however, award Elwell liquidated damages because it found that the hospital had "acted in good faith and had reasonable grounds to believe that its method of payment" to home health care nurses did not violate the FLSA.[1] J.A. at 138 (D. Ct. Order 12/14/99). Having resolved Elwell's federal claim under the FLSA, the district court dismissed without prejudice Elwell's state law claim under Ohio's Minimum Fair Wage Standards Act.

On January 7, 2000, University filed a notice of appeal, which was held in abeyance pending the district court's ruling on the motion for reconsideration. Elwell filed a timely notice of cross-appeal on February 1, 2000.

## II. ANALYSIS

### A. Fee Basis

University argues that the district court erred in granting Elwell's motion for summary judgment because Elwell was paid on a fee basis in accordance with 29 C.F.R. § 541.313(b). Specifically, University argues that the district court erred in concluding that the nature of Elwell's work was not unique and that Elwell was not paid on a fee basis because of the additional hourly pay she received for meetings, in-service training, on-call duty, and infusion visits that lasted longer than two hours. This court reviews de novo a district court's grant of summary judgment. *Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir. 1999), *cert. denied*, 528 U.S. 1157 (2000). Summary judgment is proper only when there is no dispute as to a material question of fact and one

---

[1] On December 22, 1999, Elwell filed a motion for reconsideration of the liquidated damages issue, which the district court denied by marginal entry order on January 24, 2000.

overtime — as opposed to its failure to keep records — was willful, the ambiguous phrasing of the court's ruling may have confused the jury as to what factors it could properly consider in assessing willfulness.

In particular, the court's ruling could have been construed by the jury as an instruction that it could not consider University's failure to keep time records for *any* purpose in determining willfulness. We think such a ruling would be incorrect. Although the FLSA does not permit an employee to bring a private action for recordkeeping violations, an employer's recordkeeping practices may nonetheless corroborate an employee's claims that the employer acted willfully in failing to compensate for overtime. *See, e.g.*, *Majchrzak v. Chrysler Credit Corp.*, 537 F. Supp. 33, 36 (E.D. Mich. 1981) (finding willful violation of overtime provisions where company policy of not recording "compensation time" earned for working in excess of forty hours per week was "susceptible to abuse and indeed was abused herein"). For example, the fact that an employer knowingly under-reported its employee's work hours could suggest to a jury that the employer was attempting to conceal its failure to pay overtime from regulators, or was acting to eliminate evidence that might later be used against it in a suit by one of its employees. If so, this evidence would make it more likely that the employer was aware of a substantial risk that its activities violated the FLSA, and acted in conscious disregard of that risk. *See Marshall v. Sam Dell's Dodge Corp.*, 451 F. Supp. 294, 301 (N.D.N.Y. 1978) ("The defendants' practice of knowingly maintaining inaccurate time records which greatly understated the number of hours worked by their sales personnel permits only one conclusion; i.e. the violations of the Act were willful.").

We conclude, however, that any error in the court's ruling was harmless. Federal Rule of Civil Procedure 61 provides that "[n]o error in the admission or exclusion of evidence and no error or defect in any ruling . . . is ground for . . . disturbing a judgment or order, unless refusal to take such

*Lines*, 900 F.2d 71, 72-73 (6th Cir. 1990) (internal citation omitted).

Initially, we conclude that the district court did not err in refusing to give Elwell's proposed instruction on the issue of willfulness. Under 29 U.S.C. § 216(b), an employee may bring a private action against an employer for unpaid overtime or minimum wages. This provision does not authorize employee suits for violations of the FLSA's recordkeeping requirements. Authority to enforce the Act's recordkeeping provisions is vested exclusively in the Secretary of Labor. *See* 29 U.S.C. § 217 (authorizing the Secretary to initiate injunction proceedings to restrain any violation of 29 U.S.C. § 215, including 29 U.S.C. § 215(a)(5), which makes it unlawful for an employer to fail to comply with the recordkeeping requirements contained in 29 U.S.C. § 211(c)); *see also Powell v. Florida*, 132 F.3d 677, 678 (11th Cir.), *cert. denied*, 524 U.S. 916 (1998) (noting that Secretary has exclusive authority to bring suit under § 217). Elwell, therefore, was not entitled to damages for University's violations of the FLSA's recordkeeping requirements. Her cause of action was based solely upon University's failure to pay overtime. As a consequence, she could benefit from the three-year statute of limitations only if the jury found that University's failure to pay overtime was willful. In contrast, Elwell's proposed instruction would allow the jury to find a willful violation of the FLSA if it concluded that University recklessly disregarded its statutory duty to keep records, whether or not the jury also believed the hospital was reckless as to its duty to pay overtime. This is an inaccurate statement of the applicable law, and its exclusion was proper.

Our inquiry does not end there, however. We also must consider whether the court misinstructed the jury when, during Elwell's closing argument, it ruled that counsel's argument concerning the recordkeeping evidence was "not an element of recklessness or willfulness." J.A. at 200. Although we think that the court's ruling was correct, insofar as it requires Elwell to prove that University's failure to pay

party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). Viewing all facts and inferences drawn therefrom in the light most favorable to the nonmovant, this court then determines whether the evidence presented is such that a reasonable jury could find for that party. *Aiken*, 190 F.3d at 755 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The FLSA provides that employees may not be required to work more than forty hours per seven-day week without overtime compensation at a rate not less than one and one-half times their regular pay. 29 U.S.C. § 207(a)(1). Persons employed in a "bona fide . . . professional capacity," however, are exempted from the overtime pay requirements. 29 U.S.C. § 213(a)(1). The employer has the burden of proving that an employee satisfies any exemptions under the FLSA, and exemptions under the FLSA are narrowly construed against the employer. *Takacs v. Hahn Auto. Corp.*, 246 F.3d 776, 779 (6th Cir.), *cert. denied*, - - U.S. - -, 122 S. Ct. 202 (2001) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

The FLSA's implementing regulations prescribe the standards for determining whether an employee qualifies for exemption as a professional. The regulations set forth a five-part test, commonly known as the "long test," for professional employees who are "compensated for services on a salary or fee basis at a rate of not less than $170 per week . . . exclusive of board, lodging, or other facilities." 29 C.F.R. § 541.3(e). The regulations also create a "short test" for professional employees "who are compensated on a salary or fee basis at a rate of at least $250 per week exclusive of board, lodging, or other facilities." 29 C.F.R. § 541.315(a).

Because there is no dispute that Elwell received at least $250 per week excluding board, lodging, or other facilities, the "short test" applies to University's claim that Elwell is a professional employee exempt from the FLSA. Under this test, University must prove: (1) that Elwell's primary duties

consisted of the performance of work "requiring knowledge of an advanced type in a field of science or learning"; (2) that her "work require[d] the consistent exercise of discretion and judgment"; and (3) that she was paid "on a *salary or fee basis* at a rate of at least $250 per week exclusive of board, lodging, or other facilities." 29 C.F.R. § 541.315(a) (emphasis added). Elwell does not dispute the first two prongs of this test. She disputes only whether she was paid on a fee basis as defined by the FLSA regulations.

The FLSA regulations set forth the following guidelines for determining whether a particular compensation plan qualifies as a fee basis arrangement:

Little or no difficulty arises in determining whether a particular employment arrangement involves payment on a fee basis. Such arrangements are characterized by the payment of an agreed sum for a single job regardless of the time required for its completion. These payments in a sense resemble piecework payments with the important distinction that generally speaking a fee payment is made for the kind of job which is unique rather than for a series of jobs which are repeated an indefinite number of times and for which payment on an identical basis is made over and over again. Payments based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payments on a fee basis.

29 C.F.R. § 541.313(b). Elwell concedes that her job was "unique" within the meaning of the regulations. She contends, however, that University's compensation plan, which combines fee payments and hourly compensation, does not qualify as a fee basis because it ties compensation, at least in part, to "the number of hours or days worked and not on the accomplishment of a given single task." 29 C.F.R. § 541.313(b).

of the persons it employs and of the wages, hours and other conditions and practices of employment it maintains and shall preserve such records for a period of time.

Tr. at 341-42. At the conclusion of the jury charge, Elwell's counsel objected to the "record keeping . . . not being part of the willful violation." Tr. at 350.

Apparently undeterred by the court's ruling, Elwell attempted to present her theory of willfulness to the jury during closing argument. While addressing the willfulness issue, plaintiff's counsel focused on University's recordkeeping practices. After recounting University's failure to keep adequate time records, counsel posed the following question: "Now, the fact that there are literally no time records, and that we know that the daily activity records are sporadic, are incomplete, do you think that constitutes a reckless disregard of the defendant's duties to maintain records under the Fair Labor Standards Act?" J.A. at 199. Defense counsel objected, and the district court sustained the objection. Elwell's attorney, however, continued to discuss the missing time records, and finally stated "[n]ow, we maintain this is reckless disregard by defendant University Hospital Home Care Services of their duties to keep adequate records." J.A. at 200. The district court again sustained defense counsel's objection and stated that "[t]he Court has ruled that that is not an element of recklessness or willfulness." J.A. at 200.

Elwell objects to the ruling of the district court. She contends that the jury should have been allowed to consider University's recordkeeping practices in determining willfulness. We review the district court's instructions to the jury "as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision. A judgment may be reversed only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Beard v. Norwegian Caribbean*

reckless in failing to maintain required time records for its employees. The proposed interrogatory asked:

> Did Plaintiff prove by a preponderance of the evidence that the defendant University Hospital Home Care acted willfully or with reckless disregard of the requirements of the Fair Labor Standard[s] Act by failing to comply with the law on record keeping for hours worked or for payment of overtime pay?

Pl.'s Proposed Jury Instructions at 4. At the close of the evidence, defense counsel objected to the proposed instruction on the grounds that it permitted the jury to determine recklessness based upon University's failure to keep records, whether or not it found that University acted willfully in failing to pay overtime. Defense counsel explained that "one can envision a situation where an employer may maintain shoddy records but nevertheless compensate their employees for overtime hours in excess of 40." Tr. at 317.

While the record contains no explanation of the court's ruling on this issue, the court apparently determined that Elwell's requested instruction was improper. Instead, the court gave the following instruction on the issue of willfulness:

> [I]f you find that the defendant either knew or acted with reckless disregard for whether its conduct was prohibited by the Fair Labor Standards Act, then the time frame extends back another year. . . .
>
> An employer acts willfully if it knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Fair Labor Standards Act. An employer acts with reckless disregard when it acts or fails to act with a conscious unconcern for the consequences.
>
> You are instructed that the Fair Labor Standards Act requires an employer to make, keep and preserve records

We agree. The definition of "fee basis" in 29 C.F.R. § 541.313(b) states that such arrangements are characterized by payment for a completed task "*regardless* of the time required for its completion." (emphasis added). This language suggests that a compensation plan will not be considered a fee basis arrangement if it contains any component that ties compensation to the number of hours worked. This is contrasted with the salary basis regulation, which explicitly provides that "additional compensation besides the salary is not inconsistent with the salary basis of payment."[2] 29 C.F.R. § 541.118(b). The express provision for additional forms of compensation in the salary basis regulation suggests that the Department of Labor knew how to permit hybrid compensation schemes when it desired to do so. The fact that no similar provision is made in the fee basis

---

[2]The regulations provide:

It should be noted that the salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment. The requirement will be met, for example, by a branch manager who receives a salary of $155 or more a week and in addition, a commission of 1 percent of the branch sales. The requirement will also be met by a branch manager who receives a percentage of the sales or profits of the branch, if the employment arrangement also includes a guarantee of at least the minimum weekly salary (or the equivalent for a monthly or other period) required by the regulations. Another type of situation in which the requirement will be met is that of an employee paid on a daily or shift basis, if the employment arrangement includes a provision that the employee will receive not less than the amount specified in the regulations in any week in which the employee performs any work. Such arrangements are subject to the exceptions in paragraph (a) of this section. The test of payment on a salary basis will not be met, however, if the salary is divided into two parts for the purpose of circumventing the requirement of payment "on a salary basis". For example, a salary of $200 in each week in which any work is performed, and an additional $50 which is made subject to deductions which[] are not permitted under paragraph (a) of this section.

29 C.F.R. § 541.118.

regulation suggests, therefore, that hybrid compensation plans, which combine both fee based and hourly compensation, are excluded from the definition of fee basis arrangements. This conclusion is consistent with the general rule that exemptions to the FLSA are narrowly construed against the employer. *See Takacs*, 246 F.3d at 779.

Because the undisputed facts show that Elwell's compensation arrangement was based at least in part on the number of hours she worked, we conclude that the district court correctly awarded summary judgment to the plaintiff as to University's claim that she was an exempt professional. Although Elwell was paid on a strict fee basis for most of her required job duties, including most of her patient visits, she was also paid on an hourly basis for some duties, including infusion visits that lasted longer than two hours, on-call duty, in-service training, and required staff meetings. As we have already explained, such a hybrid plan does not qualify as a fee basis arrangement.[3]

---

[3] The district court suggested that its ruling was also supported by evidence showing that the per-visit fee schedule used by University was "actually based on the number of hours worked and not on the accomplishment of a single given task as required by 29 C.F.R. § 541.313." *Elwell*, 76 F. Supp. 2d at 807. In particular, the district court relied upon a University document which set forth the method by which the basic per-visit fee was calculated. This document showed that

> payment for home visits was based on the hourly rate of $17.65, multiplied by thirty nine hours of work and then dividing the gross hourly wage by 25, the average productivity number per week. The remaining hour was for meetings paid on an hourly basis.

*Id.* Based upon this document, the district court concluded that [t]he defendant did not pay Elwell an agreed sum regardless of the time spent on a particular task but used time estimates for a flat payment amount with an enhancement by an hourly rate if a visit took longer than two hours." *Id.* In essence, the district court agreed with Elwell's contention that the flat per-visit fee was really a proxy for hourly compensation.

While we are inclined to agree that a plaintiff could maintain an FLSA claim upon evidence that the employer's use of a fee based compensation plan was nothing more than a proxy for an hourly wage, we

---

of prejudgment interest, as the Supreme Court has held that a plaintiff cannot recover both liquidated damages and prejudgment interest under the Fair Labor Standards Act. *Brooklyn Sav. Bank*, 324 U.S. at 715-16; *McClanahan*, 440 F.2d at 325; *see also Lilley v. BTM Corp.*, 958 F.2d 746, 755 (6th Cir.), *cert. denied*, 506 U.S. 940 (1992).

## C. Instruction on Recordkeeping

Elwell also argues that the district court erred in refusing to allow the jury to consider evidence of University's recordkeeping in its determination of whether the hospital's FLSA violations were willful. A finding of willfulness would permit Elwell to recover an additional year of unpaid overtime. While the FLSA normally has a two-year statute of limitations for actions to recover unpaid overtime, the Act extends the limitations period to three years if the defendant's violation was willful. 29 U.S.C. § 255(a). The Supreme Court has explained that a FLSA violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

Evidence presented at trial revealed that University failed to keep records of the time worked by its home health employees in preparing schedules, completing case management duties, and completing required documentation and paperwork. University supervisor Anne Adamek admitted during cross-examination that she was aware that the employer has a statutory duty to maintain accurate records of the time worked by employees, but nevertheless she conceded that the hospital's activity reports did not include a space for the employee to record time spent on these ancillary duties. University offered no explanation for this deficiency.

Elwell's proposed jury instructions included a special interrogatory, which would have allowed the jury to apply the three-year statute of limitations if it found that University was

Moreover, Juris's testimony addressed only whether home health care nursing requires a course of professional study and involves the exercise of discretion. These prongs of the professional exemption test are not at issue in the instant case. Nothing in Juris's testimony concerned the hospital's grounds for believing that a plan which combined fees and hourly compensation was properly considered a fee basis compensation plan for the purposes of the FLSA. Therefore, this testimony provides no assistance in demonstrating the hospital's good faith as to the central question presented here.

In sum, we determine that University has offered no evidence that would satisfy its burden of proving it acted in good faith when adopting the payment scheme challenged here.[5] We therefore reverse the district court's decision not to award Elwell liquidated damages and remand the case to the district court for a determination of the amount of appropriate liquidated damages. *See, e.g., Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 967-68 (6th Cir. 1991).[6] Pursuant to this decision, we vacate the district court's award

---

[5]We note that this conclusion is not inconsistent with the jury's verdict that University's violations of the FLSA were not willful. *See Dep't of Labor v. City of Sapulpa*, 30 F.3d 1285, 1289 n.6 (10th Cir. 1994); *see also Reich v. Newspapers of New Eng., Inc.* 44 F.3d 1060, 1065 (1st Cir. 1995) (affirming district court's finding that overtime violations were not willful, where court also awarded liquidated damages). Although a jury verdict finding that the employer acted willfully forecloses the possibility of finding that the employer acted in good faith, *Palo Group Foster Home*, 183 F.3d at 474, the reverse is not necessarily true. For example, mere negligence by the employer is not sufficient to permit a finding of willfulness. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988). Nevertheless, an employer who acted negligently — but not willfully — in violating the FLSA would not be able to satisfy the objective standard of reasonableness required to demonstrate good faith. *See City of Sapulpa*, 30 F.3d at 1289 (noting that good faith is objective standard).

[6]As a general matter, a plaintiff's liquidated damages equal the determined amount of unpaid overtime compensation. 29 U.S.C. § 216(b) (1998).

---

Contrary to University's assertions, *Fazekas v. Cleveland Clinic Found. Health Care Ventures, Inc.*, 204 F.3d 673 (6th Cir. 2000), does not mandate a holding in its favor on Elwell's FLSA claim. In *Fazekas*, a panel of this circuit held that home health care nurses at the Cleveland Clinic, who were paid *solely* on a fee basis for each patient visit, were exempt professionals who were paid in accordance with § 541.313(b) of the FLSA regulations. In so doing, the *Fazekas* panel primarily addressed the issue of whether the nurses' patient visits were unique "rather than . . . a series of jobs which are repeated an indefinite number of times and for which payment on an identical basis is made over and over again." 29 C.F.R. § 541.313(b); *see also Fazekas*, 204 F.3d at 676-79. Moreover, because the home health care nurses in *Fazekas* were paid solely on a fee basis regardless of the number of hours spent on each of their visits and were never paid on an hourly basis for any of their duties, the *Fazekas* panel did not address the central issue in this case, which is whether an employee who is paid on both a fee and an hourly basis may be considered a professional employee exempt from the overtime provisions of the FLSA. Consequently, the decision in *Fazekas* does not control the outcome of this case. Because University did not compensate Elwell on a fee basis, Elwell is not an exempt professional under the FLSA, and the district court properly awarded summary judgment to Elwell.

---

think this would be a question of fact to be decided by the jury. The evidence cited by the district court could, at best, show a question of material fact as to whether University's fee schedule was actually calculated for the purpose of compensating nurses based upon time worked. The fact that different fees were assigned to certain different kinds of home visits, however, might support the contrary inference that factors other than the number of hours worked were used in determining the per-visit fee. Therefore, the evidence showing that the per-visit fee was really a proxy for hourly compensation is not sufficient to award summary judgment to the plaintiff in this case, although this evidence may have been sufficient to overcome the defendant's motion for summary judgment by showing a material fact question as to whether University's compensation arrangement was actually fee based.

## B. Liquidated Damages

On cross-appeal, Elwell argues that the district court abused its discretion by not awarding her liquidated damages. Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (1998). Liquidated damages under the FLSA "'are compensation, not a penalty or punishment.'" *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971) (quoting *Overnight Motor Co. v. Missel*, 316 U.S. 572, 583 (1942)); *see also Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) ("It constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being."(internal quotations omitted)).

A district court, however, has the discretion not to award liquidated damages to a prevailing plaintiff if "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938." 29 U.S.C. § 260 (1998); *see also Herman v. Palo Group Foster Home*, 183 F.3d 468, 474 (6th Cir. 1999). This burden on the employer is substantial and requires "proof that [the employer's] failure to obey the statute was *both* in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict." *McClanahan*, 440 F.2d at 322 (internal quotations omitted) (emphasis added). "In the absence of such proof [,however,] a district court has no power or discretion to reduce an

employer's liability for the equivalent of double unpaid wages." *Id.*; *see also Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 405 (7th Cir. 1999) ("'Although in the final analysis, we review a district court's decision on liquidated damages for abuse of discretion, that discretion must be exercised consistently with the strong presumption under the statute in favor of doubling.'" (quoting *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 733 (7th Cir. 1998))).

We conclude that the district court abused its discretion by not awarding Elwell liquidated damages. University has not met its burden of proving that it was acting in good faith when it instituted its compensation plan. The only evidence submitted by the hospital to establish good faith was the trial testimony of Susan Juris, the hospital's Vice President and Administrator. Juris testified that she was surprised by the opinion letter that was relied upon by the district court in concluding that home care nurses were not professionals because "nurses are professionally trained, often degreed individuals, and they rely on their professional judgments." J.A. at 196. Juris, however, was not employed by the hospital at the time its compensation plan was instituted or at any time that Elwell worked for the hospital. Therefore, University could not assert that it was relying on Juris's expertise when it created its hybrid per-visit fee/hourly compensation plan. Nor has University suggested that it was relying on the expertise or opinion of any other person or entity with knowledge of the FLSA regulations, including its attorney or the Department of Labor. In fact, Juris testified that she was not aware of the hospital ever requesting an opinion from the Department of Labor concerning its hybrid compensation arrangement.[4]

---

[4] Juris did testify that she was not aware of any prior enforcement actions by the Department of Labor against University. The absence of prior Department of Labor enforcement activity by itself, however, is not sufficient to establish the employer's good faith and reasonable grounds for believing that its actions were compliant with the FLSA.