RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0046p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor,

> *Plaintiff-Appellee/Cross-Appellant*,

*v.*

MIN & KIM, INCORPORATED, dba Seoul Garden of Ann Arbor, a Michigan corporation; KOUNWOO HUR; SUNG HEE KIM,

> *Defendants-Appellants/Cross-Appellees*.

Nos. 18-1190/1338

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:15-cv-14310—George Caram Steeh, District Judge.

Argued: January 31, 2019

Decided and Filed: March 18, 2019

Before: BATCHELDER, SUTTON, and DONALD, Circuit Judges.

---

## COUNSEL

**ARGUED:** Cindy Rhodes Victor, KUS RYAN, PLLC, Auburn Hills, Michigan, for Appellants/Cross-Appellees. Sarah Kay Marcus, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Appellee/Cross-Appellant. **ON BRIEF:** Cindy Rhodes Victor, KUS RYAN, PLLC, Auburn Hills, Michigan, for Appellants/Cross-Appellees. Melissa A. Murphy, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Appellee/Cross-Appellant.

———————————

**OPINION**

———————————

SUTTON, Circuit Judge.   The U.S. Department of Labor sued two restaurant owners, Kounwoo Hur and Sung Hee Kim, for breaking the Fair Labor Standards Act's overtime and recordkeeping rules.   The district court held that Hur and Kim violated the Act and must pay their employees the unpaid overtime but declined to award double damages.   We affirm.

I.

For ten years, Hur and Kim have run Seoul Garden, a Korean and Japanese restaurant in Ann Arbor, Michigan.   The restaurant opens for lunch and dinner seven days a week and employs sushi chefs, cooks, cook helpers, servers, busboys, dish washers, and a manager. Employees customarily work the lunch and dinner shifts six days a week.   Before August 2016, when the restaurant got a time clock, employees did not record their hours.   Hur and Kim instead kept schedules with employees marked present or absent for each shift.   The schedules didn't record whether employees left early or stayed late.   But the lunch shift is 3.5 hours on weekdays and 4 hours on weekends, while the dinner shift is 5 hours every day.   Everyone thus agrees that employees work a rounded average of 52 hours a week.

Hur and Kim negotiate individualized wages with each employee.   They start by agreeing on a "guaranteed wage," a lump sum for the expected six days of double shifts.   This works out to be a day rate, as their pay records show that employees who miss a day of work lose one-sixth of their "guaranteed wage" that week.

Based on this guaranteed wage, Hur and Kim derive an hourly rate (for 40 of the expected hours) and overtime rate (for the 12 remaining hours).   Somehow, for reasons Hur and Kim never fully explained, some employees' rates are too low to reach the guaranteed wage even when they work a full week.   For those employees, Hur and Kim throw in a "bonus" to bring their pay up to the agreed-upon weekly wage.   In a few instances, employees worked so many hours that their straight-time and overtime pay exceeded their guaranteed wage.   In those cases, Hur and Kim applied a "negative bonus" to reduce the pay to the guaranteed wage.   So long as

they work six days, employees generally make the same amount every week even if their overtime hours vary.

Hur and Kim maintain that their pay practices have been consistent since they purchased the restaurant, but they did not memorialize them in written contracts until January 2017. For some years, they simply recorded the cash sum they paid employees each pay period. For other years, they recorded more details, at least for a few employees.

The Department of Labor's Wage and Hour Division investigated Seoul Garden in October 2014, eventually prompting this enforcement action. The Department alleges that Hur and Kim's pay and recordkeeping practices violate the Fair Labor Standards Act and that they owe their employees overtime pay for September 2013 through March 2017.

On cross-motions for summary judgment, the district court held that Hur and Kim owe back pay in the amount of $112,212 to 28 employees and enjoined them from continuing to violate the Act. It excused them from paying liquidated damages. Hur and Kim appeal the first part of this ruling, and the Department appeals the second part of it.

II.

The Fair Labor Standards Act requires employers to compensate employees at one and one-half times their "regular rate" if they work over 40 hours per week. 29 U.S.C. § 207(a)(1). The Act defines "regular rate" as the total weekly pay divided by the weekly hours. *Id.* § 207(e); 29 C.F.R. § 778.109. All non-exempt employees are entitled to overtime pay calculated in this way, whether the employer pays them on an hourly basis or not. The Act also imposes recordkeeping requirements on employers, *see* 29 U.S.C. § 211(c), and empowers the Department of Labor to enjoin violations of these requirements, *see id.* §§ 215(a)(5), 217.

*Overtime pay.* Hur and Kim violated the Act's overtime-pay requirements. Seoul Garden employees received the same amount—the "guaranteed wage"—no matter how many hours they worked. Normally that isn't a problem under the Act so long as the employer pays the minimum wage and the employees do not work more than 40 hours. But the parties agree

that Seoul Garden employees normally work 52 hours a week, making the "guaranteed wage" unlawful if it doesn't include overtime pay.

The 28 employees worked different shift schedules and received different "guaranteed wages." Dividing each employee's total weekly hours by his guaranteed wage results in a different regular rate for each of them. But multiplying each rate by 150% for all hours over 40 produces the same conclusion: Hur and Kim paid them too little in overtime.

The paucity of evidence in the record about the restaurant's pay practices suggests that Hur and Kim put more emphasis on providing good Korean and Japanese food than on keeping good records. Attempting to extricate themselves from this absence of evidence, they maintain that their historic pay practices parallel the records from 2016 to 2017. But that approach does not help them. The 2016 and 2017 records show that the restaurateurs *tried* to comply with the overtime requirements of the Act by paying each employee time and a half for some hours worked over 40 hours per week. But, these records also show, the pay after 52 hours did not correlate to hours on the job. No matter how high the alleged pay, then, Hur and Kim did not pay overtime in the sense the Act cares about.

To calculate overtime pay, the Act requires employers to divide total pay by total hours to determine an employee's regular rate, and to multiply that rate by 150%. "Total pay" takes on different meanings depending on each pay arrangement. An employer may lawfully do what Hur and Kim claim they did here, starting with a fixed salary and a shift schedule and working backwards to compute hourly and overtime rates. To double check the employer's overtime math, a Department of Labor investigator would deduct a baked-in overtime premium like this from the salary before dividing that figure by total hours to figure out the regular rate. 29 U.S.C. § 207(e)(5); *see* 29 C.F.R. § 778.114 (prescribing *total* hours, including overtime, as the divisor when employers pay by shift without regard to fluctuating hours).

So where did Hur and Kim go astray? They paid the agreed-upon salary no matter how many hours an employee worked in excess of 52, unless that employee worked a full extra shift. A salary that supposedly includes overtime pay but does not vary with actual hours worked cannot include "overtime" as the Act defines it. *See* 29 C.F.R. § 778.310. That means total pay

for Seoul Garden is employees' *total weekly pay*, the "guaranteed wage," bonus and all, which in turn means a higher overtime rate than Hur and Kim used. Whether intentionally or not, Hur and Kim shorted their employees.

Hur and Kim do not quarrel with these numbers. They instead argue that their hourly rates are generous by industry standards and that the Act allows a day-rate system without overtime pay when employers pay their employees more than the minimum wage. The first point is neither here nor there; the second point isn't true. In the last analysis, Hur and Kim failed to calculate overtime pay in the way the Act prescribes, resulting in a shortfall for their employees, one that entitles the employees to be made whole.

*Recordkeeping.* Hur and Kim separately violated the Act's recordkeeping requirements. The Act requires employers to record overtime-eligible employees' daily and weekly hours, hourly rate of pay, daily or weekly straight-time earnings and overtime pay, and total wages per pay period. *Id.* § 516.2(a), (c). The Act also requires employers to record each employee's position, full name, home address, and gender. *Id.* § 516.2(a).

Hur and Kim have time and payroll records for the years 2013 to 2014 and 2016 to 2017. They have no records for the two-year gap in between. That is not the only omission. Some of the records for 2013 to 2014 contain just employees' first names and their biweekly pay, nothing more. Although other records contain more details, particularly those following the advent of the restaurant's time clock, none of Hur and Kim's documentation contains all of the required information for all employees. Most glaringly, Hur and Kim did not track employees' hours at all until August 2016. That omission violates the Act by any account.

Hur and Kim try to counter this conclusion on two grounds. They first invoke an exception to the recordkeeping requirements. The Act's implementing regulations allow employers to record employees' normal daily and weekly hours, rather than actual hours, if the employees work a fixed schedule. *Id.* § 516.2(c). But the fixed-schedule exception requires employers to record employees' "exact number of hours worked each day and each week" for every week in which they work more or less than the fixed schedule. *Id.* § 516.2(c)(2). Until mid-2016, however, Hur and Kim never recorded actual hours worked.

Hur and Kim protest that they did not know about the Act's recordkeeping requirements, and that they have taken steps to address their recordkeeping problems with the time clock and written employee contracts going forward. But using ignorance of the law as an excuse usually confirms two gaps in understanding, not one. Ignorance of the law after all rarely works as an excuse, especially in civil cases. *See Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561–62 (6th Cir. 2000). True to form and true to tradition, this civil law does not have a knowledge requirement and thus does not have any such exemption. *See* 29 U.S.C. § 211(c). That the restaurant's new recordkeeping system appears to comply with the Act is of course good news. But that does not erase the prior violations.

*Actual damages.* When an employer's records fall short, the Department of Labor must establish the amount of time worked based on reasonable implications and inferences. In the words of the U.S. Supreme Court, the Department must show that employees "performed work for which [they were] improperly compensated" and "produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) (quotation omitted). Such a reasonable estimate will suffice if the employer fails to "negative the reasonableness of the inference." *Id.*

The Department of Labor's investigator explained how she calculated unpaid overtime. For 2016 and 2017, she used Hur and Kim's records, which included actual hours worked and total weekly pay, to calculate overtime pay based on the regulation's formula. For 2013 and 2014, the investigator relied upon Hur and Kim's payroll records and shift schedules, estimating actual hours to comport with Hur's and Kim's testimony about how long shifts lasted. Between 2014 and 2016, Hur and Kim did not produce any records, leaving the investigator to use data from the other years to estimate hours and wages. Grounding the calculation in Hur's and Kim's own records and testimony, the investigator showed that Seoul Garden employees performed improperly uncompensated work and provided a reasonable estimate of the amount.

Hur and Kim have not offered any evidence to rebut the investigator's reasonable calculations. But they have offered a few legal arguments. They start by labeling the calculations speculative. Inexact, yes; speculative, no. Yes, they are not exact; they couldn't be

in view of the plentiful holes in Hur and Kim's records. But, no, they are not speculative; they turn on reasonable estimates based on what evidence we do have.

Hur and Kim add that the calculations improperly include employees not named in the original complaint. But the amended complaint in fact lists each employee.

Hur and Kim insist that they *did* produce records for 2014 to 2016. But the investigator stated under oath that she did not receive any records for that period. With push approaching shove, Hur and Kim acknowledge that, "unfortunately," these records never made it into the record. Min & Kim 3d Br. 1. Records that allegedly exist but never made it into the record do not provide a cognizable ground for reversal.

Hur and Kim note that they pay employees generously relative to the minimum wage and that not one employee complained. But each argument is beside the point. Generosity is in the eye of the beholder, in this instance the eye of the employee, which is why compliance with the Act turns on dollars-and-cents calculations, not employee-satisfaction surveys. The absence of complaints is especially unhelpful. Employees are not apt to complain when they receive the sum they bargained for, particularly when it exceeds minimum wage, and the employer's records offer no basis for figuring out the correct pay. Recall that Hur and Kim did not know what their recordkeeping responsibilities were, as their ignorance-of-the-law defense makes plain. Still waters tell us nothing in this setting.

*Liquidated damages.* In its cross-appeal, the Department argues that the district court abused its discretion in failing to grant liquidated damages. We disagree.

The Act permits the Department to recover liquidated damages up to the amount of the unpaid overtime—what amounts to a possibility of double damages. 29 U.S.C. § 216(c). In the words of the statute: "The Secretary may . . . recover . . . an equal amount as liquidated damages," *id.*; if, however, "the employer shows to the satisfaction of the court that the act or omission . . . was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [Act], the court may, in its sound discretion, award no liquidated damages," *id.* § 260. Abuse-of-discretion review applies to the court's decision. *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002).

Hur and Kim adopted the prior owner's payment practices when they purchased Seoul Garden in 2008.  Those practices had never been the subject of an investigation.  Both at the time of purchase and continuing until the death of their accountant, the late Amy Lee, Hur met frequently with the accountant, who went over the Act's general requirements and discussed "payroll and all these details."  R. 54-3 at 35.  Hur referred to materials from the Department about how to pay employees, testifying that he discussed the information with Lee if he didn't understand it.  When asked if he discussed the guaranteed wage and hourly rate with Lee, Hur testified, "[Y]es, I did," saying that he told her "everything about how we pay and explained everything."  *Id.*  By affirmatively seeking to understand the Act's requirements and consulting with and relying on an accountant about the guaranteed wage, as well as the minimum wage and overtime laws, Hur and Kim acted in good faith and had reasonable grounds for believing they were in compliance with the Act.  *See Martin v. Ind. & Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004).  The district court did not abuse its discretion in deciding that they met this requirement "to the satisfaction of the court."  29 U.S.C. § 260.

The government counters that the district court erred by failing to address the reasonable-grounds prong of § 260.  But the court correctly described both prongs before explaining its decision in light of this case's facts, which in turn fairly apply to both prongs.  No doubt, the court could have separated the facts applicable to each prong.  But it is the rare abuse of discretion that arises from organizational choices in an opinion.

The government adds that the facts do not support the court's decision anyway.  The government points to Hur's and Kim's spotty recordkeeping, shifting explanations of their pay structure during the Department of Labor investigation, and conflicting testimony over whether they asked their accountant about the guaranteed wage.  The recordkeeping objection does not go far.  For purposes of liquidated damages, we focus on the overtime-pay violation.  *See id.* § 216(c) (permitting such damages only for minimum-wage or overtime-pay violations).  How Hur and Kim responded to the Department of Labor also does not tell us much here.  The question is whether they had a reasonable, good-faith belief in their compliance *before* those inquiries.  The district court did not abuse its discretion.

*Sufficiency of the complaint.* That leaves little drama in the case. Out of an abundance of caution and perhaps hope, Hur and Kim separately argue that the district court should have granted their motion to dismiss the Department's complaint. But having just upheld the district court's ruling, we can safely add that the evidence and allegations in the complaint support this cause of action. A well-pleaded complaint need not include detailed factual matter or supporting evidence. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Department's complaint met this modest standard, pairing the insufficient-compensation allegation with a description of Hur and Kim's pay practices, and the insufficient-recordkeeping allegation with the information that Hur and Kim failed to record.

*Prejudgment interest.* That leaves one final matter. The government asked for prejudgment interest in the event the district court did not award liquidated damages. Now that we have upheld the court's decision not to award liquidated damages, we must remand the case to the district court to consider that request in the first instance. *Brooklyn Sav. Bank v. O'Neill*, 324 U.S. 697, 715 (1945); *see McClanahan v. Mathews*, 440 F.2d 320, 326 (6th Cir. 1971).

We affirm the judgment of the district court and remand the case to allow the court to consider the government's request for prejudgment interest.