RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0228p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

STEPHEN J. STANLEY, JR.,

          *Plaintiff-Appellant*,

*v.*

FCA US, LLC,

          *Defendant-Appellee*.

No. 21-4238

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Toledo.
No. 3:19-cv-00640—James R. Knepp II, District Judge.

Decided and Filed:  October 18, 2022

Before:  McKEAGUE, THAPAR, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Catherine H. Killam, GREENFIELD, KILLAM & FRANK, LTD., Toledo, Ohio, Matthew B. Bryant, BRYANT LEGAL, LLC, Toledo, Ohio, for Appellant.  J. Stanton Hill, SEYFARTH SHAW LLP, Atlanta, Georgia, for Appellee.

─────────────────

## OPINION

─────────────────

McKEAGUE, Circuit Judge.  Stephen J. Stanley, Jr. filed two lawsuits which together give rise to the issues before us: first, a Chapter 13 bankruptcy lawsuit and second, a civil lawsuit alleging that his former employer, FCA US, violated the Family and Medical Leave Act (FMLA).  Stanley failed to disclose the civil lawsuit in his bankruptcy petition.  And as a result of that omission, the district court never reached the merits of Stanley's FMLA claim.  Instead, the district court granted summary judgment for FCA US on judicial estoppel grounds.

Stanley contends that was a mistake because he had no motive to omit this employment suit as his bankruptcy plan did not provide for a discharge of his debts. Because we find he did have motive to conceal the claim, we affirm the district court opinion.

I.

Stanley filed for Chapter 13 bankruptcy on May 24, 2018. As part of his application, he answered the question of whether there was any money or property owed to him, including "Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment" in the negative. That question provided examples of possible claims he should list: "Accidents, employment disputes, insurance claims, or rights to sue." On December 11, 2018, Stanley's bankruptcy plan was modified to provide that there would be "no future modification of dividend to unsecured creditors below 100%." A week later, the bankruptcy court confirmed Stanley's plan.

But both before and after filing for bankruptcy, Stanley was having problems with his employment at FCA US. Stanley alleges FCA US violated the FMLA and that those violations led to the termination of his employment on May 31, 2018. The Union filed two grievances on Stanley's behalf—one before he filed for bankruptcy and one after. Both grievances were withdrawn by the Union. Unhappy with that resolution, Stanley filed the at issue FMLA interference lawsuit on March 22, 2019.

As part of this FMLA interference suit, Stanley was deposed on January 27, 2021, at which point counsel for FCA US questioned him about whether he had disclosed the case in his bankruptcy proceedings. He had not. FCA US sent a settlement letter to Stanley on February 25, 2021, raising the same issue.

In response to the questioning by FCA US, on April 27, 2021, Stanley updated his bankruptcy asset disclosure to include: "Employment with Fiat Chrysler Automobiles terminated May 31, 2018 (post-petition) in violation of FMLA" with "unknown" value. Finding that amendment too little too late, the district court granted summary judgment for FCA US on judicial estoppel grounds. *Stanley v. FCA US, LLC*, No. 3:19 CV 640, 2021 WL 5760546, at *9 (N.D. Ohio Dec. 3, 2021). This appeal followed.

II.

We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the non-movant. *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Still, the nonmoving party must provide more than "a scintilla of evidence" in support of its position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Similarly, we review a district court's application of judicial estoppel de novo. *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010).[1]

III.

Judicial estoppel is a discretionary equitable doctrine. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). It "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* at 749 (citation omitted). In doing so, the doctrine "preserve[s] 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *White*, 617 F.3d at 476 (quoting *Browning*, 283 F.3d at 776).

When a separate bankruptcy proceeding is involved, judicial estoppel bars an undisclosed suit when: "(1) the debtor assumed a position contrary to one she asserted under oath while in bankruptcy; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the debtor's omission did not result from mistake or inadvertence." *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 314 (6th Cir. 2013) (citing *White*, 617 F.3d at 478).

---

[1]We acknowledge that our sister circuits review for abuse of discretion, and that there is a "seeming incongruity of applying *de novo* review to the inherently discretionary decision of a court to apply judicial estoppel." *Davis v. Fiat Chrysler Automobiles U.S., LLC*, 747 F. App'x 309, 313 n.2 (6th Cir. 2018). But we are bound by our precedent and thus continue to apply the de novo standard of review. *Id.*; *see also In re Ohio Execution Protocol*, 860 F.3d 881, 891 (6th Cir. 2017) (en banc).

Here, Stanley concedes that the first two elements are not at issue in this case because he did not disclose this claim in his bankruptcy petition and the bankruptcy court confirmed his plan. Our analysis is therefore limited to the third element: whether Stanley's omission resulted from mistake or inadvertence.

To determine whether a debtor's omission of a claim from a bankruptcy petition resulted from mistake or inadvertence, courts consider whether: (1) the debtor had knowledge of the facts underlying the undisclosed claims; (2) the debtor had motive to conceal the undisclosed claims; and (3) the omission was made in bad faith. *See White*, 617 F.3d at 478. Like the district court, we study each of these disputed considerations.

First, it is clear that Stanley had knowledge of the facts underlying the undisclosed claims. At the time he signed his bankruptcy petition, he was already involved with the Union's grievance process due to FCA US's alleged FLMA violations. *Cf. id.* at 479 ("White had knowledge of the factual basis of the undisclosed harassment claim, since she had already filed a complaint before the EEOC.").

Second, we consider whether Stanley had motive to conceal the undisclosed claim. We have explained that it "is always in a Chapter 13 petitioner's interest to minimize income and assets." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 426 (6th Cir. 2005); *see also Davis*, 747 F. App'x at 316; *White*, 617 F.3d at 479; *Newman v. Univ. of Dayton*, 751 F. App'x 809, 814 (6th Cir. 2018). But, in the cases in which we relied on that proposition, the bankruptcy petitioner's plans either did not require the petitioner to pay back 100% of their debts, or the bankruptcy petitioners did not argue that such complete repayment meant there was no motive. *See, e.g., Lewis,* 141 F. App'x at 426 (discharging 68% of the non-disclosing petitioner's debt). It is "rare" that a Chapter 13 petitioner agrees to pay back all their debts. *Bullard v. Blue Hills Bank*, 575 U.S. 496, 498 (2015). So, we are faced with the novel question of whether a Chapter 13 petitioner has anything to gain from omitting a claim in the rare case in which their bankruptcy plan provides for 100% repayment to their creditors.

As an initial matter, it is clear that Stanley benefited from his bankruptcy plan. He admits the same, acknowledging that he was able to consolidate debts, place debts on hold, and avoid

foreclosure on his home.  This makes sense: one would only petition for Chapter 13 bankruptcy if they had *something* to gain from the proceedings.  But the question is not whether Stanley benefited from the bankruptcy proceedings, it is whether he could have benefited from not disclosing this case in his bankruptcy petition.

The Chapter 13 bankruptcy process requires a petitioner to propose a bankruptcy plan in good faith.  11 U.S.C. §§ 1321, 1322, 1325(a)(3).  The bankruptcy trustee or holder of an allowed unsecured claim can object to the confirmation of a plan.  11 U.S.C. § 1325(b)(1).  Bankruptcy court judges review the proposals, make a good-faith determination based on the totality of the circumstances, consider objections, and, if appropriate, confirm the plans.  *In re Barrett*, 964 F.2d 588, 592 (6th Cir. 1992); 11 U.S.C. § 1325.  As part of this process the debtor has an ongoing duty to disclose any potential claim as an asset to the bankruptcy court.  *White*, 617 F.3d at 479 n.5 (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 207–08 (5th Cir. 1999)).  Such a disclosure obligation is "at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge."  *Lewis*, 141 F. App'x at 424 (quoting *In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003)).

Here, Stanley's creditors did not have a complete, accurate picture of Stanley's assets when considering whether to object to his plan.  11 U.S.C. § 1324.  Similarly, the bankruptcy court, in making the good-faith determination, did not have the full story.  *In re Barrett*, 964 F.2d 588, 592 (6th Cir. 1992).  It is possible that, had the bankruptcy court and Stanley's creditors known about this claim, the outcome of Stanley's bankruptcy petition could have been less favorable to Stanley.  Because one stands to benefit from omitting claims during their Chapter 13 bankruptcy proceedings—even if they don't have their debts discharged——motive generally exists to conceal the claims.

Stanley pushes back.  He believes this case should be controlled by *Browning*, a Chapter 11 case, where the creditors—not the debtor—would receive any recovery from the suit, so there was no evidence of motive to conceal the claim.  283 F.3d at 776.  Stanley argues that, like the plaintiff in *Browning*, he can "receive no windfall" from this case because he has already agreed to repay all his debts.  *Id.*  But that argument ignores that Stanley himself stood to gain from the nondisclosure: disclosure could have resulted in bankruptcy terms less favorable to Stanley.

And Stanley's situation is not like *Browning*, where there was no possibility that the funds from the undisclosed suit would revert to the plaintiff. *Id.* at 777. Stanley is subject to the rule, not any exception. *Cf. Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 698–99 (6th Cir. 2014) (citing Ohio Rev. Code § 3923.19(A)) (no motive found in part because any funds recovered from the undisclosed disability lawsuit were exempt from the bankruptcy court's reach under law).

Alternatively, Stanley seems to suggest that our rule that it "is always in a Chapter 13 petitioner's interest to minimize income and assets" should be overruled. *White*, 617 F.3d at 479 (quoting *Lewis,* 141 F. App'x at 426). As a historical matter, we first used this language in *Lewis*, citing *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002) as support. 141 F. App'x at 426. The Eleventh Circuit has since overturned *Burnes*. *See generally Slater v. United States Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017) (en banc). The en banc Eleventh Circuit did so because the rule from *Burnes* "permitted the inference that a plaintiff intended to make a mockery of the judicial system simply because he failed to disclose a civil claim." *Id.* at 1185. Following *Slater*, instead of making that inference, courts in the Eleventh Circuit are directed to consider all the facts and circumstances of a particular case to determine if inconsistent statements were intended to make a mockery of the judicial system. *Id.*

Stanley makes a fair point in calling these developments to our attention. But his objections ultimately have two problems, one foundational and one practical. As a structural matter, "[o]ne panel of this court may not overrule the decision of another panel." *See United States v. McKinnie*, 24 F.4th 583, 589 (6th Cir. 2022) (quoting *United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017)). And as a practical matter, *Slater* employs a framework much like the test in our Circuit, which asks not only whether the debtor had a motive to conceal undisclosed claims, but also whether that failure to disclose was done in bad faith. *See, e.g.*, *White*, 617 F.3d at 478–80.

Finally, we consider whether the omission was made in bad faith. It is the non-reporting petitioner's burden to provide evidence showing an absence of bad faith. *White*, 617 F.3d at 480. Evidence of attempts to correct the omission can show an absence of bad faith. *See Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 898–99 (6th Cir. 2004). Courts consider the accuracy,

timing, and effectiveness of corrective disclosures. *White*, 617 F.3d at 480. But merely allowing a bankruptcy petitioner to avoid judicial estoppel by correcting omissions after an opposing party notifies them of the same "'would encourage gamesmanship' and defeat the purpose of the doctrine." *Newman*, 751 F. App'x at 815 (quoting *White*, 617 F.3d at 481).

Here, Stanley submitted a corrective disclosure to the bankruptcy court. But he only did so *after* counsel for FCA US questioned him about the omission and sent him a demand letter raising the judicial estoppel argument. *Cf. White*, 617 F.3d at 481 ("White only fixed her filings after the opposing party pointed out that those filings were inaccurate."); *Newman*, 751 F. App'x at 814. And the eventual late disclosure was deficient because Stanley failed to include the estimated value of the lawsuit. *See White*, 617 F.3d at 481–82. He listed the value as "unknown" despite, only two months earlier, telling FCA US that he sought $602,894 in damages. This late, perfunctory disclosure does not demonstrate an absence of bad faith.

It is troubling that Stanley was represented by counsel in both his bankruptcy case and this case, but that he nonetheless wound up in this position. But neither bad legal advice nor attorney inadvertence automatically excuses an omission. *Lewis*, 141 F. App'x at 427 ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962))). Although Stanley argues that he "did not know that [he] ought to have disclosed [his] FMLA claim," (even though he certified that the information he provided was true and correct) ignorance of the law is generally not an excuse. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 581 (2010); *Acosta v. Min & Kim, Inc.*, 919 F.3d 361, 365 (6th Cir. 2019) ("Ignorance of the law after all rarely works as an excuse, especially in civil cases."); *see also Kimberlin*, 520 F. App'x at 315. And Stanley gives us no reason to depart "from the general rule set forth in *Link* that litigants are bound by the actions of their attorneys." *White*, 617 F.3d at 484.

For these reasons, the district court properly applied judicial estoppel to bar Stanley's claim.

Stanley raises concerns about the equity of this outcome.  He argues that the application of judicial estoppel in this case "allows an FMLA violator to get away with it, to no one's benefit."  Appellant Br. 7, 19–20.  But, like the Seventh Circuit, we find that:

> A doctrine that induces debtors to be truthful in their bankruptcy filings will assist creditors in the long run (though it will do them no good in the particular case)— and it will assist most debtors too, for the few debtors who scam their creditors drive up interest rates and injure the more numerous honest borrowers.

*Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006).

IV.

For these reasons, we AFFIRM.