Terry J. KENNEDY, et al., Plaintiffs,

v.

COMMONWEALTH EDISON COMPANY, a/k/a ComEd, Defendant.

No. 00–4053.

United States District Court,· C.D. Illinois, Rock Island Division.

March 18, 2003.

Dorothy A. O'Brien, Marlita A. Greve, Brad A. Reynolds, O'Brien & Greve PLC, Davenport, IA, for Plaintiff.

James S. Whitehead, Max Fischer, Sidley, Austin, Brown & Wood, Glenn D. Newman, Susan H. Rider, Douglas A. Graham, [Deft Attorney2], Exelon Business Services Co., Legal Dept., Chicago, IL, for Defendant.

### ORDER

McDADE, District Judge.

On January 31, 2003, the Court entered an Order granting Plaintiffs' motion for summary judgment and denying Defendant Commonwealth Edison Company's (ComEd) cross-motion for summary judgment. The subject matter of the aforementioned summary judgment motions was whether Plaintiffs are paid on a salary basis as described and determined under the Fair Labor Standards Act and the Illinois Minimum Wage Law.

ComEd subsequently filed a Motion for Certification for Interlocutory Appeal or, in the Alternative, for Reconsideration of [the] January 31, 2003, Order. On February 3, 2003, the Court heard arguments regarding ComEd's motion. For the following reasons, ComEd's motion for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is denied as moot and the Court grants ComEd's motion for reconsideration. The Jan. 31st Order awarding Plaintiffs summary judgment is vacated and Plaintiffs' motion for summary judgment, which was allowed in the Jan. 31st Order is now denied. The reasons for these decisions follows.

### I.

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit v. CBI Industries,* 90 F.3d 1264, 1269 (7th Cir.1996). Furthermore, it is not appropriate to argue matters that could have been raised in prior motions or rehash previously rejected arguments in a motion to reconsider. *See id.* at 1270. A Rule 59(e) motion should be granted if there exists "a manifest error of law or fact," so as to enable "the court to correct its own errors and thus avoid unnecessary appellate procedures." *Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir.1996).

### II.

ComEd contends that the Court manifestly erred in holding that Plaintiffs were not salaried employees as a matter of law and, accordingly, did not fall within the

exemption for "administrative" employees provided in Section 13(a)(1) of the Fair Labor Standards Act of 1938 (FLSA).[1] The rationale of the holding was the finding that the additional compensation paid at an hourly rate to Plaintiffs for hours worked beyond the regular forty hour work week was inconsistent with a "salary basis" because of (1) the existence of an established traditional bonus program; and (2) the operation of ComEd's "snow day" policy providing for full-day absences due to inclement weather could not be treated as an absence for "personal reasons" within the meaning of 29 C.F.R. § 541.118(a)(2).

In its filing, ComEd suggests that the Court misapplied FLSA regulations concerning "salary basis." To this end, ComEd presents four arguments. First, that the Court failed to address *Bosch v. Commonwealth Edison Co.*, which is a sister court's decision from the Northern District of Illinois holding that extra compensation paid to ComEd employees for time worked beyond their normally scheduled work week did not defeat the employees exempt status. *See* No. 01 C 1741, 2002 U.S. Dist. LEXIS 8075, at *4–6 (N.D.Ill. May 1, 2002). Second, that the Court did not consider Opinion Letters issued by the Wage and Hour Division of the United States Department of Labor. Third, that the Court's Jan. 31st Order conflicts with established precedent. ComEd's final argument is that its payments of additional compensation is allowed under FLSA regulations; and that there is no showing that ComEd ever reduced the salary of any employees because of an employee's absence due to inclement weather.

The majority of ComEd's arguments require little discussion because they lack merit. With respect to the *Bosch* decision, a basic jurisprudential tenet is that a federal district court's decision can provide persuasive—though not binding—authority on another federal district court. Additionally, after review, the Court determined that the *Bosch* opinion offered little to the issue at hand. Although well-reasoned, the *Bosch* opinion only concluded that "straight-time overtime pay to salaried management employees ... for time worked beyond their normal basis scheduled work week" did not defeat the employees exempt status. 2002 U.S. Dist. LEXIS at, *5 (internal quotations omitted). This proposition, as discussed *infra*, is well-established. However, the matter before the Court as the Court perceived it in its Jan. 31st Order was whether additional compensation coupled with an extant, formal bonus program and the snow day policy defeated the employees exempt status. The *Bosch* decision did not discuss this confluence of other factors showing that Plaintiffs were not being paid on a salary basis.

█ With respect to ComEd's second argument, Opinion Letters issued by the Wage and Hour Division of the United States Department of Labor "are 'entitled to respect' ... to the extent that they are persuasive...." *Christensen v. Harris County*, 529 U.S. 576, 578, 120 S.Ct. 1655, 1657, 146 L.Ed.2d 621 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)). Of course, they also must be relevant to the issue at hand. Unfortunately, as the Court perceived the issue in its Jan. 31st Order, the Opinion Letters ComEd relied upon were not considered germane. Lastly, with respect to ComEd's argument that

---

**1.** The success of Plaintiffs' state law claim under the Illinois Minimum Wage Law (IMWL) is dependant on the outcome of Plaintiffs FLSA claim. *See* 820 ILCS 105/4a(2)(E). Accordingly, while the Court's Order is written as only regarding Plaintiffs' FLSA claim, it is construed as applying equally against Plaintiffs' IMWL claim.

Plaintiffs failed to show an *actual* pay deduction, an actual deduction *per se* is not necessary. See *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (the Supreme Court held that an employment policy that creates a "significant likelihood" of deduction could result in the denial of exempt status); *see also Klein v. Rush–Presbyterian St. Luke's Medical Center,* 990 F.2d 279, 284 (7th Cir.1993) (there does not have to be an actual deduction from salary so long as the employee is subject to a possible deduction).

### III.

ComEd's argument that the Court's Jan. 31st Order is in conflict with the Secretary of Labor's FLSA Regulations, has merit based upon the Court's current understanding of ComEd's contentions and controlling law. The Court did not apprehend the critical importance of the limitation found in the FLSA regulation section 541.118(a) that retention of exempt status depends upon the absence of any deduction from the specified salary, and that the "other factors" that could destroy exempt status had to implicate that limitation. Consequently, the issue in the Jan. 31st Order should have been whether Plaintiffs' regular salaries were reduced by the bonus plan or snow day policy discussed by the Court. The Court's failure to make this analysis in the Jan. 31st Order is a manifest error of law, which causes the Court to grant ComEd's motion for reconsideration.

### IV.

Unfortunately, we do not have the benefit of explicit teachings of the Seventh Circuit Court of Appeals on this issue of overtime pay. *See Klein v. Rush Presby-* *terian St. Luke's Medical Center.* 990 F.2d 279 (7th Cir.1993). In *Klein,* the employer had a comp time policy that allowed an employee who worked more than forty hours to bank as positive comp time the excess hours. If the employee failed to work a regular forty hour pay period, the employee would incur negative comp time, however, any "banked" positive comp time could then be drawn upon to offset the negative comp time. The *Klein* panel reasoned that "when Klein was forced to go into negative comp time, she may not have been actually paid less, but she was going into a form of debt since any later accumulated comp time had to pay off that debt." *Id.* at 284. Employees were discouraged from amassing numerous hours of negative comp time. An employee could be paid for positive comp time but pay was never reduced for negative comp time, nor did the latter have to be paid back upon termination of employment. In the final analysis, however, this negative comp time feature was found to be "similar to docking an employee's pay because of the number of hours worked." *Id.* at 284. In other words, the Seventh Circuit construed the comp time policy to allow deduction from Klein's salary, which was inconsistent with a salaried basis. In affirming the district court's decision that the plaintiff in *Klein* was not paid on a salary basis because of other factors, *the Seventh Circuit found it unnecessary to decide if additional compensation itself is always inconsistent with a salaried status.*[2] The other factors found to be inconsistent with a salaried status were the aforementioned negative comp time feature combined with a disciplinary policy that subjected the employee to unpaid disciplinary suspensions for minor infractions. Providently, the circuit

---

**2.** The circuit court observed that there existed a split among the circuits on this issue with the Ninth and Third Circuits taking the positions that overtime pay is generally inconsis- tent with a salaried status and the Second Circuit, along with various district courts within the Seventh Circuit, taking the opposite view in this particular situation.

court identified one feature that all courts considered critical to the loss of exempt status: "most courts that have addressed the issue have agreed that if an employer has a policy of reducing an employee's compensation for fractions of days that the employee is absent from work, then the employer may not invoke the . . . exemption with regard to that employee." *Klein* at 284. It is now clear to the Court that whether or not there is any deduction in an employee's regular salary is the sine qua non of the FLSA regulation defining "salary basis." 29 C.F.R. § 541.118(a).

An employee will be considered to be paid 'on a salaried basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly or less frequent basis, a predetermined amount constituting all or part of his compensation, *which amount is not subject to reduction because of variations in the quality or quantity of the work performed.* (emphasis added).

■ There is nothing in this definition remotely suggestive that additional compensation itself is inconsistent with a salary basis. Rather, the key requirement is that the employee receive his salary without deduction. The distinction the Court made in the Jan. 31st Order between public and private employers and the applicability of the "public accountability" doctrine to allow public employers to deduct amounts from salary for work not done was misapplied to the issue at hand. The problem in the instant case is not the significance of a deduction from Plaintiffs' salary but whether the payment of additional compensation based on the number of hours worked beyond an expected work week is inconsistent with a "salary basis." There is simply nothing in the FLSA regulations or case law that is persuasive support for the proposition that the mere payment of additional compensation, without some feature subjecting an employee to a deduction from normal salary, is inconsistent with salaried status.

While Plaintiffs seek to defend the Court's ruling in the Jan. 31st Order that the extant, formal bonus plan and the snow day policy were other factors showing that Plaintiffs were not being paid on a salary basis; unfortunately, the Court was manifestly wrong in both instances. These factors do not directly or indirectly cause any salary deduction, and are not analogous to the negative comp time feature found in *Klein.* The coexistence of an extant, formal bonus program which the Court previously found significant to show that the Plaintiffs were not paid on a salary basis is no longer viewed in an inimical light. First, while § 541.118(b) only lists three examples of allowable additional compensation, there is nothing in the regulations showing that this is meant to be an exclusive list. Second, it is apparent from the record that additional payments made to Plaintiffs were not an attempt to circumvent regulatory requirements, but a method for rewarding employees for time and effort beyond their normal commitment. While it would be troubling if Plaintiffs were paid a truly nominal amount (possibly an amount that would not provide living wages) for their work, but then had this "pay" supplemented by several "bonus" structures, see *Wright v. Aargo Security Services, Inc.,* 2001 WL 91705, at *5 (S.D.N.Y. Feb.2, 2001), this is not the case. It is undisputed that Plaintiffs earn significant salary, and while this alone obviously does not exempt them from the overtime provision, it is indicative that their structured pay and existing additional payments are not a sham to avoid the regulations' overtime provision.

■ The snow day policy, as conceived, could result in the deduction from paid time off (PTO) benefits for full day absences from work due to inclement weath-

er. In that connection, ComEd contends that it has never reduced the salary of any employee for a full or partial snow day, or required an employee to charge a partial day's absence to the PTO benefits, or made a deduction from salary in a case where PTO benefits were exhausted. All this is to say that the snow day policy has never resulted in any deduction from an employee's salary in keeping with the requirements of § 541.118(a) of the FLSA regulations. On the other hand, *Klein* teaches that there does not have to be an actual deduction so long as the employee is subject to a possible deduction. However, as pointed out in the Seventh Circuit subsequent opinion in *Haywood v. North American Van Lines, Inc.*, 121 F.3d 1066, 1069 (7th Cir.1997) (also see *Murphy v. Commonwealth Edison Company*, 2002 WL 832608 (N.D.Ill.2002)), "leave docketing" (which is how ComEd describes the ramifications of the snow day policy) as distinguished from "pay docketing" can be done without jeopardy to the exempt status of an employee. Thus in *Haywood*,[3] the circuit court in expressly approving a private employer's docking of paid leave benefits to compensate a salaried employee for absences, said:

> Even if Ms. Haywood had chosen not to make up this time before taking it off, her salary would not have been reduced. Instead she would have been issued a check in the same amount as always, and she would have had one fewer days of sick leave or personal leave.

This is the Department of Labor's interpretation of the regulations as well. *See Lucero v. Regents of Univ. of Calif.*, 1993 WL 341287, 1993 U.S. Dist. LEXIS 12208,

*25–29 (discussing Wage–Hour Opinion Letters approving leave docking).

The motion for reconsideration is allowed for the reasons discussed *supra;* and it has allowed the Court to correct what it sees as manifest errors of law that underlie the January 31, 2003 Order. Consequently, the Order of January 31, 2003, is vacated with respect to granting Plaintiffs' motion for summary judgment. However, the Jan. 31st Order left unanswered and left out of its summary judgment analysis, Plaintiffs' contention that there had been instances of threats of, and actual instances of, docking and payroll deductions, which, if true, would necessarily negate Plaintiffs being considered salaried employees. This issue must now be addressed in deciding whether summary judgment is appropriate for either party.

## V.

 As previously noted, a key to the "salary basis" test under FLSA regulations is the controlling requirement that an employee's regular compensation "is not subject to" improper deductions within the meaning of § 541.118(a). An employee's compensation is "subject to" deduction if an employer has an actual practice of impermissible deductions or a policy that creates a significant likelihood of deduction. *See Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). If a plaintiff is placing reliance on, or attempting to show, an employer's policy creating a likelihood of deduction that policy needs to be "clear and particularized" and "effectively communicates that deductions will be made in specified circumstances." *Id.*

---

**3.** The *Haywood* holding appears to conflict with the position taken in *Klein* refusing to equate inadequate positive comp time as subjecting the employee to a salary deduction. Even so, *Haywood* is more in tune with the prevailing jurisprudence on this issue within the Seventh Circuit. *See Baudin v. Courtesy*

*Litho Arts, Inc.*, 24 F.Supp.2d 887, 891 (N.D.Ill.1998) ("Numerous courts have found that employers may make deductions from something other than employee's base pay without destroying those employees' exempt status.")

(internal quotations omitted). Plaintiffs assert that their pay is "subject to" deduction because ComEd has an actual practice of impermissible deductions. Additionally, Plaintiffs allege the existence of a policy that creates a significant likelihood of deduction.

Plaintiffs allege that ComEd improperly docked Plaintiffs Kennedy, Kincaid and Christopher's respective pay. The instances of docking to Kennedy's pay occurred on Oct. 9, 2000, Oct. 11, 2000, Oct. 12, 2000 and on Feb. 4, 2000. His pay was twice reduced for a period of one-half hour and twice reduced for one hour. Kincaid's pay was reduced for two hours during the pay period spanning September 11, 2000 to September 24, 2000. Plaintiff Christopher's pay was docked on August 24, 2001 for two hours. Plaintiffs allege that these violations of the no docking rule and conclude that "these violations preclude a finding Plaintiffs are salaried." Plaintiffs also allege that ComEd had a policy of impermissibly threatening to reduce Plaintiffs' pay in increments of less than a full day unless Plaintiffs made up time missed. In support of this proposition, Plaintiffs offer Plaintiff Kennedy's deposition testimony and depositions from Plaintiffs McPeek and Etter.

ComEd disputes Plaintiffs' conclusions and contends that even if any of the above allegations are found to be inconsistent with the FLSA, they may take advantage of the FLSA's "window of correction," which permits the correction of improper occurrences without the loss of the FLSA exemption. The Court addresses Plaintiffs and ComEd's contentions in turn.

### 1. Pay Reductions

Plaintiffs allege seven incidents of improper pay reductions. ComEd has essen-

tially conceded the occurrence of these incidents, however, they have not conceded their significance.

■ "[T]he 'no-docking rule' prohibits employers from deducting an employee's pay based on partial day absences and certain other forbidden reasons." *Whetsel v. Network Property Services, Inc.*, 246 F.3d 897, 900 (7th Cir.2001) (internal citations omitted). Plaintiffs look to the aforementioned instances of docking and see a clear showing that they were not considered salaried employees.[4] While ComEd concedes the deductions occurred, ComEd notes the paucity of deduction's, that the deductions were inadvertent, were made for reasons other than a lack of work, and that ComEd has subsequently corrected every deduction. Given these considerations, ComEd argues that there is no reason for the destruction of Plaintiffs' salaried status and that ComEd is entitled to use the Regulations' "window of correction" established by section 541.118(a)(6), which states:

The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such de-

---

4. The Court notes that in their initial filing for summary judgment Plaintiffs had alleged a much higher number of "improperly" pay docking instances. In subsequent filings, however, Plaintiffs have conceded that ComEd had properly docked certain Plaintiffs' pay as the Regulations permit.

ductions and promises to comply in the future.

■ "The plain language of the regulation sets out 'inadvertence' and 'made for reasons other than lack of work' as *alternative* grounds permitting corrective action." *Auer,* 519 U.S. at 463, 117 S.Ct. 905. The provision is only applicable, however, if an employer first establishes that it objectively intended to pay its employees on a salary basis—maintaining a policy or practice of improper deductions shows that an employer lacked such an intention. *See Whetsel v. Network Property Services, L.L.C.,* 246 F.3d 897, 901 (7th Cir.2001).

■ The facts before the Court do not support Plaintiffs' argument that ComEd maintains an actual policy of improper deduction and therefore the window of correction is available to correct the aforementioned instances of deduction. With respect to Plaintiffs' documented deductions, Plaintiffs have failed to establish that these deductions were not inadvertent or that they were made because of a lack of work available. Absent this evidence, there is no indicia precluding ComEd from utilizing the window of correction. Further evidence of a lack of an actual practice is realized when the scope of these occurrences is contemplated: the aforementioned deductions occurred in a period of 500,000 payroll weeks. In this light, the deductions appear more to be a rare error and inadvertent. The Court's determination is not based on "the simple expedient of dividing the number of impermissible deductions by the number of ... employees[,]" but that the aforementioned figures present a relevant backdrop in which to review the present circumstance. *Yourman v. Giuliani,* 229 F.3d 124, 130 (2d Cir.2000). In light of this conclusion and circumstances, ComEd appropriately utilized the regulation's "window of corrections."

### 2. Threats

Plaintiffs also allege several incidents of improperly threatened pay deductions. Three Plaintiffs allege that they were informed that the hours lost to partial day absences would have to be made up during that pay period. Allegations of threats to reduce the pay of Plaintiffs could raise an issue that defeats ComEd's motion for summary judgment. *See Haywood v. North American Van Lines, Inc.,* 121 F.3d 1066 (7th Cir.1997).

ComEd contends that "[r]ather than threatening these employees, their supervision [SIC] provided them with beneficial advice and the option to work a flexible schedule[,]" and that "it is far from clear that Plaintiffs' purported 'threats' if reductions for partial day absences were not, in fact, accurate advice about the ability of the company to require the use of banks of time off or to make salary deductions because of these Plaintiffs' FMLA-qualifying reasons for wanting time off."

■ The record supports ComEd's assertions. After review of the submitted deposition and affidavits, it becomes abundantly clear that the purported "threats" told to Plaintiffs Kennedy, McPeek and Etter were nothing of the kind. In every instance alleged, the common thread is that the person at issue had available PTO time and simply sought to avoid using it; instead, Plaintiffs conserved their PTO time for future uses. Plaintiffs have not entered into the record any evidence, besides two affidavits discussed *supra,* showing that ComEd had a "clear and particularized" policy that "effectively communicates that deductions will be made in specified circumstances." *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997).

To the extent that Plaintiffs McPeek and Etter's affidavits state their belief that they would be paid less if they did not

make up their missed time (if they failed to use PTO time), there is no factual support for these conclusory statements in the record and their subjective belief is not enough to ward off summary judgment. *See Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir.2001) (reasoning that self-serving affidavits without factual support in the record do not create a genuine issue of material fact).

For all the aforementioned reasons, the Court finds that Plaintiffs are "salaried" as a matter of law.

## VI.

All that remains in this matter is completion of the parties' summary judgment filings on the "duties requirement" component of the administrative exemption test. The parties are to observe the filing requirements and timing proscribed by the local rules.

IT IS THEREFORE ORDERED that the Court's January 31, 2003 Order [Doc. # 142] is VACATED.

IT IS THEREFORE ORDERED that Defendant's Motion for Certification for Interlocutory Appeal or, in the Alternative, for Reconsideration of [the] January 31, 2003, Order is DENIED with respect to the Motion for an Interlocutory Appeal and GRANTED with respect to the Motion for Reconsideration [Doc. # 143].

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment [Doc. # 46] is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [Doc. # 119] is GRANTED.